## SUPREME COURT.

### HOWARD PAYSON WILDS agt. THE ST. LOUIS, ALTON AND TERRE HAUTE RAILROAD COMPANY and others.

*Trust deed — Mortgage agreement — Obligation to pay interest when not suspended.*

The defendant corporation gave a first mortgage on its property and franchises, in which it was provided that $12,500 of the surplus of its net earnings, after paying interest on the bonds secured by the mortgage, should be paid semi-annually to the mortgage trustees, as a sinking fund for the redemption of the bonds. The moneys in this fund, with the accumulations of interest thereon, were to be invested in the purchase of these bonds, if such purchase could be made at not exceeding ten per cent above par, the bonds so purchased to be indorsed as belonging to the sinking fund, and they were to "remain in force" and the interest thereon was to be continued to be paid as part of the capital of the sinking fund. In case the bonds could not be purchased at ten per cent above par, no further payment was to be made to the sinking fund until the price lowered to that point, when such payment of $12,500 semi-annually was to be resumed. Purchases of bonds were made until January, 1879, when they advanced in value beyond the limit imposed. But interest on the bonds held for the sinking fund continued to be paid. In this action, by a preferred stockholder of the corporation, to restrain this payment:

*Held*, (1) That the obligation to pay interest on the bonds in the sinking fund has not by the terms of the mortgage been suspended. (2) The provision of the Illinois statute, that the payments into the sinking fund shall not exceed two per cent of the gross earnings, means that such payment shall not exceed two per cent of the gross receipts of the year in which the payments are made ; and at any rate, as the company already had a corporate existence under the laws of Indiana, the provision of the Illinois statute could not affect the terms of the mortgage agreement.

*Special Term, August,* 1882.

*Thomas Thacher,* for plaintiff.

*Abraham Van Sinderen,* for defendants, trustees.

*John McL. Nash,* for railroad company, defendant.

VAN VORST, *J.* — The plaintiff is a preferred stockholder of the St. Louis, Alton and Terre Haute Railroad Company, and brings this action to restrain the company from making certain payments to the sinking fund created by the first mortgage on the railroad property and franchises, and to determine the meaning and effect of certain provisions contained in the first mortgage, and of portions of the statute under which the corporation exists. The mortgage was given to Robert Bayard and others, in trust, for the purposes therein expressed.

Article sixth of the mortgage contains the matter which, in part, has given occasion to this action. It is provided in that article, in substance, that at the end of every sixth month during which the net earnings of the railroad shall exceed the amount necessary to pay the interest upon all bonds of the company secured thereby, and then outstanding, the surplus, to the amount of $12,500, shall within sixty days be paid over to the trustees as a sinking fund for the redemption of the bonds secured by the mortgage.

It was furthermore provided in article 6 that the surplus so paid over to the trustees should by them be deposited in the United States Trust Company of the City of New York, or in some other safe depository in that city, and that the moneys, together with accumulations of interest thereon, should be invested by the trustees in the purchase of bonds secured by the mortgage, provided that the same could be purchased at a rate not exceeding ten per cent above their par value, with the accrued interest thereon, and that the bonds so purchased should be deposited with the United States Trust Company, and be immediately stamped or indorsed as belonging to the sinking fund; but that they should "remain in force," and that the interest thereon should continue to be paid by the railroad company, and that the amount of interest so paid shall be added to and be applied as a part of the capital of the sinking fund, and be invested in the purchase of other bonds in the same manner as the semi-annual pay-

Wilds agt. St. Louis, Alton and Terre Haute Railroad Co.

ment of $12,500 therein provided for. And it was further provided in article 6 that in case the bonds for the sinking fund could not be purchased for a sum not exceeding ten per cent above their par value that "then the said money shall remain at interest until bonds can be purchased therewith at public or private sale at such rates, and no further payments shall be payable to the said sinking fund till the money so remaining in the said fund can be used in purchasing said bonds at said rate or under, when such payment of twelve thousand and five hundred dollars semi-annually shall be resumed."

In pursuance of the terms of the mortgage the sinking fund has been actually created, and a large amount of money has been paid by the railroad company to the trustees for its purposes.

Until about the 1st day of January, 1879, the first mortgage bonds stood at such a price in the market that all the moneys theretofore paid for the purposes of the sinking fund could be and were in fact invested in the purchase of bonds by the trustees; and at that date bonds to the extent of $636,000 had been so purchased. But since that time the bonds have advanced in value beyond the limit imposed and on that account purchases thereof have ceased.*

Since the year 1879 the company has not made the semi-annual payments of $12,500 to the trustees, but it has continued to pay the interest on the bonds held for the sinking fund.

This continued payment of interest on the bonds purchased for the sinking fund is objected to by the plaintiff, it being in substance urged on his behalf that such payment is a wasteful use of corporate funds, as the money cannot be used in the purchase of other bonds, which at present rule in the market at a price above that limited.

---

* A construction is given to this mortgage and the duties of the trustees thereunder in *Clark* agt. *St. Louis, Alton, etc., R. R. Co.* (58 *How. Pr. R.*, 21).

But whether the corporation should continue to pay interest on such bonds, held for the sinking fund, depends upon the terms of the contract between the mortgagors and the mortgagees, subject to which the present corporation succeeded to the railroad property and franchises upon which the mortgage is a lien.

The bonds, after being purchased by the trustees for the sinking fund, were, as has been above stated, directed to be deposited with the trust company, and to be stamped "as belonging to the sinking fund." They were not by such purchase to be regarded as either paid or canceled, but otherwise they were still, as obligations, to "remain in force," and the interest thereon was to continue to be paid by the railroad company.

The obligation to pay interest remains in force, unless it is changed by the closing words of article 6 of the mortgage which are given above. By these words it is provided that no further payment should be made to the sinking fund until the money remaining therein could be used in purchasing bonds at the price limited.

It it quite clear that the obligation to pay the $12,500 semi-annually, provided for in article 6, ended so soon as the inability to buy bonds became apparent, and it does not become imperative again, until the disability is removed, when such payments are to be resumed. .

It was certainly within the power of the contracting parties, in creating the mortgage or trust deed, to provide that the bonds purchased and deposited in the trust company should remain in force against the company, in so far at least, as the payment of interest thereon was concerned, until the trust should be closed.

Upon a careful consideration of article 6, I cannot find that the obligation to pay interest on the bonds has been suspended. The words "and no further payments shall be payable to the said sinking fund," etc., clearly have reference to the payments of $12,500 semi-annually, for it is declared, as already

stated, that when bonds could be again purchased such payments should be resumed. Nothing is said of a resumption of the payment of interest upon the happening of such contingency. For it is to be observed that article 6 of the mortgage created the original obligation to pay $12,500 semi-annually to the trustees for the sinking fund. The obligation to pay interest is imposed by the bonds themselves, and is recognized by provisions of the mortgage other than article 6. But article 6 is careful to provide that the purchase of these bonds shall not interfere with the company's obligation to pay interest, but that it shall continue to be paid thereafter by the company.

"Payments" which upon the contingency mentioned were for a time to be suspended were such as were specially directed to be made by article 6, the obligation in respect to which is fixed by that article. That the interest so paid should go into the sinking fund and be used with the other moneys in the purchase of bonds does not, it appears to me, affect the construction which has been above given to the clause in question.

It is in this view that the closing words, "when such payments of twelve thousand and five hundred dollars semi-annually shall be resumed," become important, as showing that the payment of interest not having been suspended, no provision for its resumption was necessary.

Whether the arrangement for the creation and maintenance of the sinking fund for the ultimate redemption of the first mortgage bonds was the wisest plan in form and detail which could have been adopted is not open to consideration by the court, so long as it does not contain illegal provisions. The creation, increase and preservation of such a fund is for and during a period of years. And what in any one year may seem unprofitable may in the end turn out to have been the dictate of prudence and forethought.

Stockholders of corporations, as is quite natural, desire to receive dividends on their stock, and the larger the better;

but it often turns out that a part of the money which has gone in this way could have been more advantageously, for all concerned, secured in a sinking fund to pay corporate indebtedness. And courts would reluctantly break into a scheme for the creation of a sinking fund, arranged coincident with the incurring of an indebtedness, which it was designed to secure, and then only when its provisions were of a nature clearly to call for judicial interference. The safety of the money paid into a sinking fund is of more importance than the amount of interest it might earn.

Another objection is however urged by the learned counsel for the plaintiff, to the effect that the payments made to the sinking fund in amount transgressed the limits imposed by the statutes of the state of Illinois. Section 11 of the Illinois statute of February 18, 1861, amongst other things, enacts that, "in providing for a sinking fund for the retirement of such bonds, which sinking fund shall not exceed two per cent of the gross earnings of said road in each year," etc.

The meaning of this clause has been made the subject of much discussion by the counsel engaged. Although the subject is not free from doubt, yet I apprehend that the true meaning is, that the annual payments to the sinking fund shall not exceed two per cent of the gross receipts of the year in which the payments are made.

But it must be borne in mind that when the purchasers of the property of the former corporation, to which the present one succeeded, took advantage of the provisions of the act of February 18, 1881, by making and filing the certificate provided for in section 1 of that act, the railroad company defendant herein, was already in existence as a corporation, in pursuance of the provisions of the statute of Indiana passed March 5, 1861.

The certificate of incorporation filed by the purchasers of the railroad property under the Indiana statute bears date June 19, 1862, and was filed in the office of the secretary of state of Indiana on the 24th day of June, 1862.

After such incorporation, and on the 30th day of June, 1862, and before the railroad and its property had been conveyed to the corporation, but in anticipation thereof, the mortgage in question was executed by the purchasers at the sale. And on the same day a second mortgage was executed by the same persons covering the railroad property and franchises. A conveyance was also executed the same day by the same parties to the defendant corporation, organized under the Indiana statute, of all the railroad property, subject to the two mortgages and their provisions. These mortgages and conveyances were without doubt parts of the plan of organization under the Indiana statute.

A certificate was prepared at the same time, in pursuance of the Illinois statute, and appears to have been signed by the same persons who signed the Indiana certificate. It bears date the 19th day of June, 1862. When it was actually signed does not appear. But that I regard as immaterial, as the certificate was inoperative until it was filed in the office of the secretary of state of Illinois (*Sec.* 1 *of Statute of Illinois, Feb.* 18, 1861). And it was not filed until the 4th day of June, 1863.

So that when the certificate called for by the Illinois statute was filed, the railroad company already had corporate existence, pursuant to the Indiana statute, and as such corporation had made the bonds and had incurred the obligations incident to the mortgages upon the property, including those with respect to the sinking fund.

The making and filing of such subsequent certificate could not modify, relax or change the terms of the agreement made by the purchasers or corporation with the trustees. The holders of the first mortgage bonds succeeded to their interest in pursuance of its terms as originally made.

The agreement with regard to the creation of the sinking fund contained in the mortgage, and the payment made in pursuance thereof, are not in conflict with the statute of Indiana, and if the provisions of the statute of Illinois have been

transgressed by any act or omission of the defendant corporation since the 4th day of June, 1863, it will remain for the sovereign power to interfere, and should the incorporation under the Illinois statute even be annulled, the corporation would still exist under the statute of Indiana, and the indebtedness of the corporation defendant as created thereunder, and all its obligations, would be preserved to its creditors and others.

I have considered this question for the reason that it was much discussed by the counsel engaged in the argument of this cause. But if the conclusion I have reached should not prove to be correct, there is still another reason for deciding that no relief can be granted to the plaintiff under this head, as the payments to the sinking fund, exclusive of the interest paid on the bonds held by the trust company, do not equal two per cent of the gross earnings for any year.

Besides, the Illinois statute itself provides, that the interest on the bonds " which now are a lien as well as those to be hereafter issued " shall first be paid from the earnings, and after that, payments into the sinking fund are provided for.

I cannot say, under the terms of the mortgage, that the lien of the bonds held in the trust company is gone; it is declared in express words that they " shall remain in force, and that interest thereon shall continue to be paid."

If the terms in which the sinking fund is created are carried out, a time will come when all the bonds will in equity cease to be a lien, and no further interest be demandable upon them. Then the trust will be closed by the operation of the sinking fund itself, or by a direction of the court, which would compel the application of the moneys in the hands of the trustees to the payment of the bonds, if sufficient for the purpose, and the satisfaction of the mortgage given to secure their payment. As I cannot discover that the plaintiff is entitled to any relief, there should be judgment dismissing the plaintiff's complaint.